UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHINONYEREM OSUAGWU, M.D., <br><br>                           Plaintiff, <br><br>             -against- <br><br> HOME POINT FINANCIAL CORPORATION; HOME POINT CAPITAL, INC.; AMTRUST TITLE INSURANCE COMPANY; AMTRUST FINANCIAL SERVICES, INC.; MARIANNE GONZALEZ, ESQ.; PHYLLIS SIMON, ESQ.; ARVIND GALABAYA, ESQ.; LEATICIA OSUAGWU OR ASUZU; THOMAS AMADEO; YANIRA AMADEO; JOHN DOE; JANE DOE, <br><br>                         Defendants. | 7:22-CV-3830 (CS) <br><br> ORDER OF DISMISSAL |

CATHY SEIBEL, United States District Judge:

Plaintiff Chinonyerem Osuagwu, M.D., of New City, Rockland County, New York, appears *pro se* and asserts claims under 26 U.S.C. § 6724(d)(1)(A)(vii), 26 U.S.C. § 7434, 18 U.S.C. § 242, as well as claims of constitutional violations and claims under state law.[1] His claims arise from the sale of his former residence at 49 King Arthur Court, New City, New York ("49 King Arthur Court" or "the property"). Plaintiff sues the following defendants: (1) Home Point Financial Corporation ("Home Point Financial"), of Ann Arbor, Michigan; (2) Home Point Capital, Inc., of Ann Arbor, Michigan; (3) Amtrust Title Insurance Company, of New York, New

---

[1] Under Rule 5.2(a)(1), (2), and (3) of the Federal Rules of Civil Procedure, a court submission must refer to: (1) the name of a minor child by only using the child's initials, (2) a person's date of birth by only using the person's birth year, and (3) a person's Social Security number by only using the last four digits of that number. In his complaint, Plaintiff reveals the full names and dates of birth of his minor children. He also reveals the complete Social Security number of his ex-wife. In light of this, and in an abundance of caution, the Court has directed the Clerk of Court to limit access to the complaint on the court's CM/ECF website to a "case participant-only basis."

York; (4) Amtrust Financial Services, Inc., of New York, New York; (5) Marianne Gonzalez, Esq.; (6) Arvind Galabaya, Esq.; (7) Phyllis Simon, Esq.; (8) Leaticia Osuagwu or Asuzu; (9) Thomas Amadeo; (10) Yanira Amadeo; (11) unidentified defendant "John Doe"; and (12) unidentified defendant "Jane Doe."

Plaintiff has paid the fees to bring this action. For the reasons discussed below, the Court dismisses this action, but grants Plaintiff leave to replead his claims under Section 7434 against Gonzalez and her client, Home Point Financial.

## STANDARD OF REVIEW

The Court has the authority to dismiss a complaint, even when the plaintiff has paid the fees to bring the action, if the Court determines that the action is frivolous, *see Fitzgerald v. First E. Seventh Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000), or that the Court lacks subject-matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). A claim is "frivolous when either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (internal quotation marks and citation omitted).

The Court also may dismiss an action for failure to state a claim on which relief may be granted, "so long as the plaintiff is given notice and an opportunity to be heard." *Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (citation and internal quotation marks omitted). Leave to amend need not be granted, however, if amendment would be futile. *Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim. . . . " *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

While the law allows dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits.  To state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

Plaintiff alleges the following: In 2014, Plaintiff was paid $1.75 million as part of settlement agreement to end litigation he commenced in the United States District Court for the District of New Mexico. Later in 2014, Plaintiff purchased the property at 49 King Arthur Court with a portion of the settlement payment; his then-wife, Defendant Leaticia Osuagwu (also known as Leaticia Asuzu), did not contribute anything towards the purchase of the property or its

maintenance, or pay any associated property taxes. Beginning in 2017, Plaintiff was unable to pay the property taxes that he owed for the property.

On December 16, 2020, Leaticia Osuagwu commenced a divorce proceeding against Plaintiff in the New York Supreme Court, Rockland County. Defendant Phyllis Simon, Esq. represented Leaticia Osuagwu during that proceeding; Plaintiff represented himself. Without any factual support, on April 22, 2021, Simon claimed that the property was subject to imminent foreclosure due to the unpaid property taxes, and moved the state court to allow the property to be sold immediately as marital property, as well as for the proceeds from its sale to be divided between Plaintiff and Leaticia Osuagwu.[2] The state court granted Simon's motion, and "tasked [Simon] with executing the sale and holding the proceeds in escrow." (ECF 1, at 12.) Plaintiff asked the court to reconsider its granting of Simon's motion, but the court "threatened to hold him in contempt if he attempted to sabotage the sale, or otherwise failed to cooperate with the process in any way." (*Id.*)

On or about May 27, 2021, Simon sent Plaintiff a proposed stipulation with regard to several issues in the divorce action; it included a proposal that Plaintiff agree that three years' worth of child support "be sequestered from [Plaintiff's] share of the proceeds of the sale of" the property, and that Leaticia Osuagwu relocate to Houston, Texas, with their children. (*Id.* at 13.) Plaintiff refused to agree to the proposed stipulation.

---

[2] Plaintiff alleges that after inquiring with the Rockland County Tax Office, he learned that, as result of a state law passed to prevent COVID-19-related evictions and foreclosures, "there was a moratorium on property foreclosures throughout [Rockland] [C]ounty at the time, and specifically that [the property] was not and had never been on a list for imminent foreclosure action by the County and was not the subject of a foreclosure proceeding at the time." (ECF 1, at 12.)

Approximately nine days later, on or about June 5, 2021, during an appearance before the state court, "Plaintiff 'agreed' to have the [property] sold in order to facilitate a quick resolution of the matter, but never acknowledg[ed] that it was marital property[;] . . . [nevertheless, he] signed the *Listing Document* for the sale of" the property. (*Id.*) On or about June 23, 2021, Plaintiff received from a representative of prospective buyers a proposed "*Memorandum of Agreement . . .* for the sale*" of the property. (*Id.*) Plaintiff informed Simon that he would only sign that memorandum if nothing was withheld from his portion of the sale's proceeds.[3] Simon refused to agree to Plaintiff's condition, and the prospective buyers withdrew their offer to buy the property.

One day later, on or about June 24, 2021, Plaintiff received a second memorandum from other prospective buyers. Plaintiff again informed Simon that he would only sign the memorandum if nothing was withheld from his portion of the sale's proceeds. Simon again rejected Plaintiff's condition. On that same date, Simon made a written request to the state court that it "empower her client," Leaticia Osuagwu, "to sign said *Memorandum* and other documents[,] including the *Contract of Sale*[,] 'on behalf of'" Plaintiff. (*Id.* at 14.) Simon mentioned in her request that the court "had previously made a pledge to issue such an order in the event . . . Plaintiff became uncooperative."[4] (*Id.*) The next day, on or about June 25, 2021, without inquiring as to why Plaintiff refused to sign the memorandums, the state court granted Simon's request, noting that Plaintiff was three months in arrears in child support and that any accrued arrears would be paid out of the proceeds of the sale of the home. (*See* ECF No. 1-1 at

---

[3] Plaintiff alleges that he wanted his share of the sale's proceeds to be conveyed to him in "whole so that he . . . could write checks as needed to cover arrears on child support payments and other obligations." (ECF 1, at 13-14) (footnote omitted).

[4] Plaintiff states that he was never informed of the state court's pledge to allow Leaticia Osuagwu to sign those documents on Plaintiff's behalf if he became uncooperative.

15-16.) Plaintiff wrote to the state court to challenge its granting of Simon's request, but the court did not respond.

On or about July 30, 2021, Simon sent a contract of sale to Plaintiff; it did not list the name of the prospective buyers or their attorneys. Plaintiff refused to sign the contract for the same reason he refused to sign the memoranda. On August 2, 2021, at the request of Simon, the state court issued another order "empowering Leaticia [Osuagwu] to sign Plaintiff's name and/or signature to the *Contract of Sale* document and all other documents connected with the sale [of the property,] including the *Deed*." (*Id.* at 15-16.) Again, the state court never asked Plaintiff why he did not want to sign the contract of sale. One day later, on or about August 3, 2021, Leaticia Osuagwu "signed the name and/or signature of . . . Plaintiff" on a contract of sale of the property. Plaintiff wrote to the state court seeking reconsideration, but the court did not respond.

On October 17, 2021, Plaintiff telephoned Defendant Arvind Galabaya, Esq., the attorney representing the buyers of the property, Defendants Thomas and Yanira Amadeo, "to warn him that the sale of the property would be illegal" because Plaintiff's signature was "forged" on the sale documents. (*Id.* at 17.) Galabaya told Plaintiff that Simon "had told him that [Plaintiff] had 'already lost [his] home'" and, "after a brief argument, . . . hung-up on . . . Plaintiff." (*Id.*) Plaintiff later sent an email to Galabaya, but Galabaya never responded.

On October 22, 2021, the state court issued a decision in which, according to Plaintiff, it:

> (a) [a]dmitted that it did not have all the facts . . . , (b) [c]laimed that it had the jurisdiction to empower Leaticia [Osuagwu] to sign . . . Plaintiff's signature and/or name to home sale documents, purportedly to protect marital property[,] . . . (c) [m]andated that while Leaticia [Osuagwu] would receive half the proceeds of the sale of [the property], in the event taxes are assessed on [Plaintiff's settlement funds], . . . Plaintiff alone would pay all the taxes, and Leaticia would pay none of it . . .[,] [and] (d) [a]warded attorneys fees of $15,000 to Leaticia [Osuagwu] against . . . Plaintiff.

(*Id.* at 19.) Two days later, on October 24, 2021 at 7:26 p.m., Plaintiff filed a motion to stay

enforcement of the court's decision. (ECF No. 1-1 at 95-98.)  The next day, Leaticia Osuagwu

and Simon finalized the sale of the property, "which involved Leaticia appending the signature

and/or name of . . . Plaintiff to the *Closing Documents*." (*Id.* at 21.) Defendant Amtrust Title

Insurance recorded and filed a new deed for the property in the Rockland County Clerk's Office;

the new deed bore "the 'signature' and/or 'name' of . . . Plaintiff." (*Id.*) Defendants Thomas and

Yanira Amadeo now hold the new deed for 49 King Arthur Court.

On or about November 18, 2021, Defendant Marianne Gonzalez, Esq., an attorney

representing Defendant Home Point Financial, the Amadeos' mortgage bank, sent Plaintiff an

IRS Form 1099 with regard to the sale of the property; it indicated that Plaintiff's gross income

from the sale of the property was $382,500. Plaintiff did not want to accept those funds because

the sale of the property was going to be the subject of his appeal of the state court's decisions; he

requested that the Internal Revenue Service ("IRS") retract that form, but the IRS informed him

that the only party that could retract it was the party that filed it.

The state court denied Plaintiff's motion to stay on January 3, 2022, and entered "its post-

trial *Decision*" on January 12, 2022, "both reflecting faithfully the substance of the

aforementioned *Decision*." (*Id.* at 22-23.) The next day, on January 13, 2022, Plaintiff filed a

notice of appeal. Nine days later, on January 22, 2022, Plaintiff filed a motion to rescind the sale

of the property with the trial court.

On or about February 9, 2022, Simon sent to Plaintiff a document showing how funds

from the sale of the property were to be allocated, which indicated that Plaintiff, after court-

ordered deductions – the largest being child support arrears and three years' worth of future child

support, would actually receive only $55,089.22, (ECF No. 1-1 at 155-56.); Plaintiff declined to

accept those funds. Twelve days later, on February 21, 2022, Plaintiff wrote to Gonzalez requesting that she retract the IRS Form 1099 issued with respect to the sale of the property because it exposed him to tax liability; neither Gonzalez nor her client, Home Point Financial, responded to his letter.

On April 14, 2022, Plaintiff received an email from the New York Supreme Court, Appellate Division, Second Department, informing him "that his appeal had been dismissed, based on a motion filed by the [trial court], that argued that decision could not be appealed."[5] (*Id.* at 25.) Before then, Plaintiff was unaware that the Appellate Division had issued a decision with respect to his appeal. One day later, the Appellate Division granted Plaintiff leave to amend and to refile a notice of appeal, "which he has endeavored to do."[6] (*Id.* at 25-26.) On April 26, 2022, the trial court denied Plaintiff's motion to rescind the sale of the property.  (*Id. at 26.)*

Plaintiff, on the advice of his tax advisor, "did not file any taxes for the 2022 season" because "of the jeopardy to which [he was] exposed, eventuating from the IRS Form 1099 . . . filed by [Defendant] Gonzalez, including the possibility of audit and unfair incarceration for tax evasion or other tax offenses"; he "now lives in dread of persecution by the IRS, as well as" by the New York State Department of Taxation and Finance ("NYSDTF"). (*Id.* at 27.)

---

[5] Plaintiff has attached to his complaint a copy of a January 24, 2022 Decision & Order on Motion issued by the Appellate Division in which that court dismissed, on its own motion, Plaintiff's appeal of a January 12, 2022 decision of the trial court, "on the ground that no appeal lies from a decision." (ECF 1-1, at 164.)

[6] In alleging that the Appellate Division has granted him leave to amend and to refile a notice of appeal, Plaintiff refers to email correspondence that he has attached to his complaint in which a representative from the Appellate Division informed him that "the paper [Plaintiff] previously appealed is not appealable." (ECF 1-1, at 166.) The representative also stated that "[Plaintiff] can file a notice of appeal from the final order if [he has] it," and encouraged Plaintiff that "[e]ven if it's untimely, [Plaintiff] should still file it." (*Id.*)

Plaintiff asserts that "[p]ursuant to the *Supremacy Clause*, a federal court may review a state court's order, decision or judgment, and make [a] determination of liability on actions deriving from such order, decision or judgment, when such order, decision or judgment violates federal law, including the Constitution of the United States." (*Id.* at 5.) He asks this Court, with respect to his claims under federal law, to: (1) declare the sale of the property illegal; (2) declare the new deed issued for the property "forged' and "therefore[,] fraudulent"; (3) declare that the defendants have committed criminal acts by participating in the sale of the property; (4) "[f]ind the [d]efendants liable for *Fraudulent Filing of* [an] *Informational Return*"; (5) "[o]rder the immediate and total retraction by the [d]efendants[] of the IRS Form 1099 . . . , as well as any income reported to the NYSDTF, as a result of the illegal sale" of the property; (6) order the retraction of the "fraudulent deed"; and (7) award damages. (*Id.* at 63-64.)

## DISCUSSION

Although it is unclear whether Plaintiff's state-court proceeding is pending, Plaintiff expresses disagreement with the actions of the state court.[7] The Court must therefore dismiss Plaintiff's claims for injunctive and declaratory relief under two alternative theories. In the event that Plaintiff's state-court proceeding is pending, the Court must dismiss those claims under the *Younger* abstention doctrine. But if his state-court proceeding has concluded in a final judgment, the Court must dismiss those claims under the *Rooker-Feldman* doctrine. In addition, the Court must dismiss Plaintiff's remaining claims for lack of subject-matter jurisdiction or for failure to

---

[7] Plaintiff does not specify whether his divorce proceeding in the New York Supreme Court, Rockland County, has concluded. His complaint does suggest that after that court issued orders determining that 49 King Arthur Court was marital property, directing its sale, and authorizing Leaticia Osuagwu to sign documents on his behalf to effectuate its sale, he appealed those orders, but the Appellate Division dismissed his appeal as premature. Plaintiff also indicates his intent to appeal those orders once his divorce proceeding has concluded.

state a claim on which relief may be granted. But the Court grants Plaintiff leave to replead his claims against Defendant Gonzalez and her client, Defendant Home Point Financial, brought under 26 U.S.C. § 7434.

## A.    *Younger* abstention doctrine

To the extent that Plaintiff seeks, with respect to his claims under federal law, declaratory and injunctive relief from this Court that, if granted, would intervene in Plaintiff's pending state-court divorce proceeding – that is, countermand the state court's orders declaring 49 King Arthur Court marital property, directing the sale of the property, and authorizing Leaticia Osuagwu to sign documents on Plaintiff's behalf for the sale of the property – such claims are dismissed under the *Younger* abstention doctrine. In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court of the United States held that a federal court may not enjoin a pending state criminal proceeding in the absence of special circumstances suggesting bad faith, harassment, or irreparable injury that is both serious and immediate. *See Gibson v. Berryhill*, 411 U.S. 564, 573-74 (1973) (citing *Younger*, 404 U.S. 37). *Younger* abstention is appropriate in only three categories of pending state-court proceedings: (1) state criminal prosecutions; (2) civil enforcement proceedings that are "akin to criminal prosecutions"; and (3) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'n, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013) ("*Sprint*"). With respect to the third *Sprint* category, "federal courts should refrain from interfering with core state court civil administrative processes, powers, and functions that allow the state courts to adjudicate the matters before them and enforce their [orders and] judgments." *Cavanaugh v. Geballe*, 28 F.4th 428, 434 (2d Cir. 2022).

The United States Court of Appeals for the Second Circuit has made clear that "the way that New York courts manage their own divorce and custody proceedings [is] a subject in which

'[New York has] an especially strong interest'" for the purpose of the third *Sprint* category of
actions requiring *Younger* abstention. *Falco v. Justices of the Matrimonial Parts of the Supreme
Court of Suffolk Cnty.*, 805 F.3d 425, 427-28 (2d Cir. 2015) (citation omitted). The Second
Circuit has recently noted the importance of the application of the *Younger* abstention doctrine to
a federal civil action challenging state-court orders that "were meant to 'forc[e] persons to
transfer property in response to a court's judgment.'" *Cavanaugh*, 28 F.4th at 434 (quoting
*Pennzoil Co v. Texaco, Inc.*, 481 U.S. 1, 13 (1987)) (alteration in original. As the Supreme Court
noted:

> [t]here is little difference between the State's interest in forcing persons to transfer
> property in response to a court's judgment and in forcing persons to respond to the
> court's process on pain of contempt. [A federal court's intervention with respect to
> either scenario] . . . challenges . . . the processes by which the State compels
> compliance with the judgments of its courts. Not only would federal injunctions
> in such cases interfere with the execution of state judgments, but they would do so
> on grounds that challenge the very process by which those judgments were
> obtained. So long as those challenges relate to pending state proceedings, proper
> respect for the ability of state courts to resolve federal questions presented in
> state-court litigation mandates that the federal court stay its hand.

*Pennzoil Co.*, 481 U.S. at 13-14 (footnotes omitted).

Plaintiff has not alleged any facts showing that bad faith, harassment, or irreparable
injury that is both serious and immediate has occurred with respect to Plaintiff's pending state-
court divorce proceeding.[8] Thus, to the extent that Plaintiff asks this Court to intervene in that
pending proceeding, including issuing declaratory or injunctive relief that would nullify the state
court's orders determining that 49 King Court Arthur Court was marital property, directing its

---

[8] Indeed, even if Plaintiff suffered serious irreparable injury with respect to the loss of the
property – and it is hard to see how that is so, as that injury could be remedied with money –
such injury is not immediate because the property had already been sold before Plaintiff filed his
complaint commencing this action, rendering moot any of his claims challenging the state court's
orders designating the property as marital property, directing its sale, and authorizing Leaticia
Osuagwu's signing on his behalf.

sale, and authorizing Leaticia Osuagwu to sign the appropriate documents on Plaintiff's behalf for its sale, the Court dismisses such claims under the *Younger* abstention doctrine.

**B.      The *Rooker-Feldman* doctrine**

Under the *Rooker-Feldman* doctrine, federal district courts lack authority to review final state-court orders and judgments. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005); *see also Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002) ("The *Rooker-Feldman* doctrine . . . recognizes that 28 U.S.C. § 1331[,] [the statute granting federal district courts federal-question jurisdiction,] is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments . . . ."); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) (The *Rooker-Feldman* doctrine "bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court [of the United States] is the only federal court with jurisdiction over such cases." (citing 28 U.S.C. § 1257))). The *Rooker-Feldman* doctrine "precludes a United States district court from exercising subject-matter jurisdiction. . . ." *Exxon Mobil Corp.*, 544 U.S. at 291.

"[I]n some circumstances, federal suits that purport to complain of injury by individuals in reality complain of injury by state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005). District court review of claims is barred under the *Rooker-Feldman* doctrine when four requirements are met: (1) the plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district-court review and rejection of the state-court judgment; and (4) the state-court judgment must have been rendered before the district-court proceedings commenced. *Dorce*, 2 F.4th at 101 (quoting *Hoblock*, 422 F.3d at 85). "[P]laintiffs are permitted to seek [relief] for injuries caused by a defendant's misconduct in procuring a state court judgment, but not for

12

injuries directly caused by that judgment." *Id.* at 104. The *Rooker-Feldman* doctrine also bars

claims arising out of a third party's actions when those actions "are produced by a state-court

judgment and not simply ratified, acquiesced in, or left unpunished by it." *Hoblock*, 422 F.3d at

88 (holding that "[w]here a state-court judgment causes the challenged third-party action, any

challenge to that third-party action is necessarily the kind of challenge to the state judgment that"

the *Rooker-Feldman* doctrine bars).

      A plaintiff's request that a federal district court review and declare invalid a state court's

final order or judgment in a divorce proceeding determining that the property at issue is martial

property, and directing its sale, is prohibited by the *Rooker-Feldman* doctrine. *See Kramer v.*

*Dane*, No. 17-CV-5253, 2018 WL 4489284, at *2-3 (E.D.N.Y. Sept. 19, 2018) (plaintiffs'

challenges to final "decisions and judgments depriv[ing] them of custody of . . . marital

property" were prohibited by the *Rooker-Feldman* doctrine), *appeal dismissed*, No. 18-3141,

2019 WL 3948762 (2d Cir. Apr. 25, 2019) (slip op.); *Lally ex rel. T.A. & P.A. v. Leff*, No. 17-CV-

4291, 2018 WL 5077163, at *7 (E.D.N.Y. July 17, 2018) ("In essence, Plaintiff requests review

of the merits of that judgment including a determination on the propriety of: . . . the sale of the

Marital Property. It is also undisputed that the Divorce Action concluded, and the judgment was

rendered before this federal action. As a result, the *Rooker-Feldman* doctrine precludes

Plaintiff's claims. . . ."), *report & recommendation adopted sub nom.*, *Lally v. Leff*, No. 17-CV-

4291, 2018 WL 4445152 (E.D.N.Y. Sept. 18, 2018), *appeal dismissed*, No. 18-3124, 2019 WL

3954787 (2d Cir. Mar. 6, 2019) (slip op.); *Oxman v. Oxman*, No. 3:16-CV-1304, 2017 WL

4078114, at *3-4 (D. Conn. Sept. 13, 2017) (*Rooker-Feldman* doctrine prohibited claims

"couched in terms of fraud and violations of constitutional rights, [because it was] apparent that

the injuries the plaintiff claims she has sustained all relate back to the Judgment of the New York

Supreme Court entered in the plaintiff's divorce case . . . and the consequences flowing from that Judgment, e.g., the transfer of . . . property.").

This doctrine also prohibits claims arising from a third party's actions effectuating the court-directed sale of marital property. *See Hense v. Martin*, No. 09-CV-8829, 2010 WL 11527316, at *4-5 (S.D.N.Y. May 13, 2010) (*Rooker-Feldman* doctrine prohibited claims arising from injuries caused by state-court judge's order "directing the sale of the marital property. Plaintiff's allegations against all Defendants arise from their roles in the court-ordered sale of the marital property. It is thus clear that all of the Defendants' allegedly unlawful actions are 'produced by' [the] state court judgment ordering the disposition of the marital property.") (footnote omitted), *aff'd*, 417 F. App'x 83 (2d Cir. 2011) (summary order); *see generally Dorce*, 2 F.4th at 105 (Second requirement for *Rooker-Feldman* doctrine is met when "the injury . . . complain[ed] of is the loss of . . . property, which was caused by the state court judgments that divested [the plaintiffs] of that property. By effecting the divestiture of [the plaintiffs'] interest in their property, the state court judgments thus directly inflicted the injury complained of.").

If the state court's determination that 49 King Arthur Court was marital property, as well as its orders directing the property's sale and authorizing Leaticia Osuagwu to sign all relevant documents on behalf of Plaintiff to effectuate its sale, constitute a final state-court judgment, then Plaintiff is prohibited, under the *Rooker-Feldman* doctrine, from asserting claims asking this Court to declare the sale of the property invalid and that the new deed reflecting the change of ownership is fraudulent. Thus, even if the *Younger* abstention doctrine does not prohibit those

claims, then the Court alternatively dismisses them, under the *Rooker-Feldman* doctrine, for lack of subject-matter jurisdiction.[9] *See* Fed. R. Civ. P. 12(h)(3); *Exxon Mobil Corp.*, 544 U.S. at 291.

## C.    Private prosecution

Plaintiff's claims in which he seeks the criminal prosecution of the defendants must also be dismissed. Plaintiff cannot initiate the prosecution of an individual or other entity in this court because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981). Plaintiff also cannot direct prosecutors to initiate a criminal proceeding against any defendant because prosecutors possess discretionary authority to bring criminal actions and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). Accordingly, because Plaintiff lacks standing to cause the criminal prosecution of others, *see Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973), whether under 18 U.S.C. § 242 or otherwise, the Court dismisses, for lack of subject-matter jurisdiction, any claims in which Plaintiff seeks the criminal prosecution of any of the defendants, *see* Fed. R. Civ. P. 12(h)(3); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) ("If [a] plaintiff[ ] lack[s] Article III standing, a [federal] court has

---

[9] It does not matter whether Plaintiff's appeal of the state court's final judgment is pending because "[c]ourts in this Circuit have routinely applied *Rooker-Feldman* despite pending state-court appeals." *Yanping Xu v. Suffolk Cnty.*, No. 19-CV-1362, 2020 WL 3975471, at \*6 (E.D.N.Y. July 14, 2020); *see Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F. Supp. 2d 340, 347-48 (E.D.N.Y. Mar. 30, 2010) ("Despite *Exxon Mobil*'s use of the phrase 'after the state proceedings ended,' that decision makes clear that *Rooker-Feldman* prevents federal courts (other than the Supreme Court [of the United States]) from 'review[ing] and revers[ing] unfavorable state-court *judgments*.' This purpose would be undermined if the doctrine is inapplicable simply because a litigant happens to be seeking state appellate review of a state-court judgment, while also seeking federal district court review of that judgment.") (citations omitted, alterations in original); *Murry v. Wack*, No. 94-CV-1674, 1996 WL 374142, at \*2 n.2 (S.D.N.Y. July 3, 1996) ("Though the Supreme Court has applied the *Rooker-Feldman* doctrine only in the context of final state judgments, 'there is no requirement that a state court judgment be fully appealed through the state system as a condition precedent to the application of the *Rooker-Feldman* doctrine.'") (citation omitted).

no subject matter jurisdiction to hear [his] claim.") (internal quotation marks and citation omitted).

**D.    Claims of constitutional violations**

Because Plaintiff asserts claims that the defendants have violated his federal constitutional rights, the Court construes Plaintiff's claims arising from those alleged violations as brought under 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).  "State action [for the purpose of Section 1983 liability] requires *both* . . . the exercise of some right or privilege created by the State . . . *and* the involvement of a person who may fairly be said to be a state actor." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (internal quotation marks and citation omitted, italics in original). Private entities are therefore not generally considered to be state actors. *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties. . . .") (internal quotation marks and citation omitted).

In addition, absent special circumstances suggesting concerted action between an attorney and a state representative, *see Nicholas v. Goord*, 430 F.3d 652, 656 n.7 (2d Cir. 2005) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)), the representation of a party by private counsel does not constitute the degree of state involvement or interference necessary to establish a claim under Section 1983. *See Grant v. Hubert*, No. 09-CV-1051, 2009 WL 764559, at *1 (E.D.N.Y. Mar. 20, 2009) ("It is well settled that private attorneys do not act under color of state law and are not state actors simply by virtue of their state-issued licenses to practice law.");

16

*Jaffer v. Patterson*, No. 93-CV-3452, 1994 WL 471459, at *2 (S.D.N.Y. Sept. 1, 1994) ("Private law firms and attorneys . . . are not state actors for section 1983 purposes." ), *appeal dismissed*, 43 F.3d 1457 (2d Cir. 1994) (table decision).

Plaintiff has alleged no facts showing that any of the defendants – all private individuals (including private attorneys) and private entities – have acted as state actors or have violated Plaintiff's federal constitutional rights. Thus, the Court dismisses Plaintiff claims of constitutional violations under Section 1983 for failure to state a claim on which relief may be granted.

**E.   Claims under 26 U.S.C. § 7434**

Under 26 U.S.C. § 7434, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a). Rule 9(b) of the Federal Rules of Civil Procedure requires that, when "alleging fraud . . . , a party must state with particularity the circumstances constituting fraud. . . ." Fed. R. Civ. P. 9(b). "A number of district courts have divided this cause of action [under Section 7434] into three elements: (1) the defendant issued an information return; (2) the information return was fraudulent; and (3) the defendant willfully issued the fraudulent information return." *Czerw v. Lafayette Storage & Moving Corp.*, No. 16-CV-6701, 2018 WL 5859525, at *2 (W.D.N.Y. Nov. 9, 2018). "The private right of action created by § 7434(a) applies only '[i]f any person *willfully files* a fraudulent information return.'" *Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565, 568 (2d Cir. 2011) (quoting § 7434(a)) (alteration and italics in original). In this context, "the term 'willfully files' [has] its 'ordinary meaning,'" *id.* (citation omitted), and "'[a]n actionable claim [under Section 7434] only arises . . . when "the information return itself" is fraudulent,'" *Bao Guo Zhang v. Shun Lee Palace Restaurant, Inc.*, No. 17-CV-0840, 2021 WL 634717, at *11

(S.D.N.Y. Feb. 16, 2021) (citations omitted). According to its legislative history, Section 7434 "was enacted to address the fact that '[s]ome taxpayers may suffer significant personal loss and inconvenience as the result of the IRS receiving fraudulent information returns, which have been filed by persons intent on either defrauding the IRS or harassing taxpayers.'" *Katzman*, 660 F.3d at 569 (citation omitted). Congress did not intend, however, "'to open the door to unwarranted or frivolous actions or abusive litigation practices.'" *Id.* (citation omitted).

Plaintiff's claims under Section 7434 arise from Plaintiff's receipt of IRS Form 1099-S from Gonzalez, an attorney representing Home Point Financial, the Amadeos' mortgage bank. That form indicated that Plaintiff's gross income from the court-directed sale of 49 King Arthur Court was $382,500. (ECF 1-1, at 2.) Plaintiff alleges that the state court ordered the sale of the property, authorized Leaticia Osuagwu to sign on Plaintiff's behalf the appropriate documents for its sale, and ordered the proceeds of that sale to be divided equally between Plaintiff and Leaticia Osuagwu.  The equity in the property was $560,000, and that Plaintiff and Leaticia Osuagwu were thus each entitled to $280,000 from its sale, but that the state court subtracted from Plaintiff's share, among other things, his child-support arrears, three years' worth of child support in advance, $15,000 in attorneys' fees for Leaticia Osuagwu. (ECF 1-1, at 83-85, 155-156.)

Plaintiff has alleged no facts showing that any defendant, including those associated with the form's filing (Gonzalez and her client, Home Point Financial), willfully issued a fraudulent information return. "The phrase 'willfully filing a fraudulent information return' under Section 7434 requires a showing of deceitfulness or bad faith." *Katzman v. Essex Waterfront Owners LLC*, No. 09-CV-7541, 2010 WL 3958819, at *3 (S.D.N.Y. Sept. 29, 2010), *aff'd*, 660 F.3d 565 (2d Cir. 2011); *see Vandenheede v. Vecchio*, 541 F. App'x 577, 580 (6th Cir. 2013) ("willfulness

in this context connotes a voluntary, intentional violation of a legal duty") (cleaned up).  Plaintiff asserts in his Complaint that the form was fraudulent because (he believes) the state court's orders determining that the property was marital property, directing the sale of the property, and authorizing Leaticia Osuagwu to sign the appropriate documents to effectuate that sale, were illegal. (ECF 1, at 37) ("Because the [state court's] orders[] granting permission to Leaticia to sign . . . Plaintiff's name and/or signature to the documents and enabl[ing] the sale of [the property] are illegal, the sale of [the property] and transfer of title are illegal as well. Therefore, the filing of IRS Form 1099 . . . is/was illegal and fraudulent."). He also asserts that because Gonzalez and her client, Home Point Financial, knew or should have known that those state-court orders were illegal, and still filed the IRS Form 1099-S, they willfully filed a fraudulent information return. (*See* ECF 1, at 45-48.)  But even assuming that the underlying orders of the divorce court were unlawful – which Plaintiff has not shown – it is not plausible that the filers acted willfully or with knowledge that the Form 1099 was fraudulent, because they were entitled to rely on a court order authorizing the sale in the manner in which it was conducted. An information return is not fraudulent, and a filer is not acting willfully, even if the payee believes the underlying transaction should not have taken place. Plaintiff pleads no facts showing bad faith on the part of Gonzalez or Home Point Financial.  Rather, by merely reiterating his belief that the state-court orders were illegal, he reveals that he is attempting to challenge the legality of those orders indirectly, via his claims under Section 7434. Both the *Younger* abstention doctrine and the *Rooker-Feldman* doctrine prohibit this.

The Court therefore dismisses Plaintiff's claims under Section 7434 for failure to state a claim on which relief may be granted.[10]

_____

[10]Section 7434 incorporates by reference the definition of the term "information return"

The Court notes that there appears to be a discrepancy between the amount of Plaintiff's share from the sale of the property ($280,000, half of the $560,000 in net proceeds from the sale of the property) and what was listed on the IRS Form 1099-S as the proceeds that Plaintiff received from its sale ($382,500). Plaintiff has not provided facts plausibly suggesting that this discrepancy was the result of willful conduct, and the requirement in Federal Rule of Civil Procedure 9(b) to plead fraud with particularity applies to *pro se* litigants. *See, e.g.*, *Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 241 (S.D.N.Y. 2013); *Carvel v. Ross*, No. 09-CV-0722, 2011 WL 856283, at *7 (S.D.N.Y. Feb. 16, 2011), *report & recommendation adopted*, 2011 WL 867568 (S.D.N.Y. Mar. 11, 2011). But "leave to amend should be freely granted, especially where dismissal . . . [is] based on Rule 9(b). This is particularly true where the complaint is filed by a *pro se* litigant, in light of the well established rule that complaints should be liberally construed in the *pro se* plaintiff's favor." *Narumanchi v. FEMA*, 201 F.3d 432 (2d Cir. 1999) (unpublished opinion) (internal quotation marks and citations omitted). Thus, in light of Plaintiff's *pro se* status and the apparent discrepancy between Plaintiff's $280,000 share from the sale of the property and the $382,500 reported on the IRS Form 1099-S, the Court grants Plaintiff leave to replead his claims under Section 7434 against Gonzalez and her client, Home Point Financial, arising from their filing of that form, if he can allege willfulness and fraud in good faith. The Court reminds Plaintiff that, under Rule 9(b), he must allege fraud with particularity. It also reminds Plaintiff that his theory that the Form 1099-S was fraudulent

---

used in Section 6724(d)(1)(A). *See* § 7434(f); *Ryder v. J.P. Morgan Chase Bank*, No. 3:13-CV-1929, 2015 WL 13793263, at *10 (D. Conn. Aug. 19, 2015) ("The types of false information returns for which a private right of action exists is limited to the nine returns listed in 26 U.S.C. § 6724(d)(1)(A)."). To the extent that Plaintiff asserts claims under 26 U.S.C. § 6724(d)(1)(A)(vii) itself, the Court dismisses those claims for failure to state a claim on which relief may be granted because that statute does not provide for a private right of action.

because the underlying sale was unlawful will not support a § 7434 claim and should not be repeated.

## F.    Diversity jurisdiction

The subject-matter jurisdiction of the federal district courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332. Under these statutes, a federal district court's jurisdiction is available only when a "federal question" is presented or, when a plaintiff asserts claims under state law under the Court's diversity jurisdiction, when the plaintiff and the defendants are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.

"'[I]t is common ground that in our federal system of limited jurisdiction any party or the court sua sponte, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction.'" *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Prop. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (quoting *Manway Constr. Co., Inc. v. Hous. Auth. of the City of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983)); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Ruhrgas AG*, 526 U.S. at 583 ("[S]ubject-matter delineations must be policed by the courts on their own initiative.").

To establish the Court's diversity jurisdiction, a plaintiff must first show that he and the defendants are citizens of different states. *See* 28 U.S.C. § 1332(a)(1); *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998) ("A case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, *i.e.,* only if there is no plaintiff and no defendant who are citizens of the same State."). For diversity purposes, an individual is a citizen of the State where he is domiciled, which is defined as the place where he "has his true fixed home . . . and to which, whenever he is absent, he has the

intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (internal quotation marks and citation omitted). An individual "has but one domicile." *Id.* A corporation is, however, a citizen "of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." § 1332(c)(1); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (a corporation's principal place of business is its "nerve center," usually its main headquarters). There is also a second component to diversity jurisdiction − the amount in controversy must be in excess of the sum or value of $75,000. *See* § 1332(a).

Plaintiff invokes both the Court's federal-question jurisdiction and its diversity jurisdiction, and he asserts claims under both federal and state law. To the extent that Plaintiff assets claims under state law, however, he has not shown that this Court has diversity jurisdiction to consider those claims. This is because Plaintiff seems to assert that he and at least one defendant are both citizens of the State of New York. Because the parties are not diverse, this Court lacks diversity jurisdiction to consider Plaintiff's claims under state law.

## CONCLUSION

The Court dismisses this action for the reasons set forth in this order, but grants Plaintiff 30 days' leave to replead his claims under 26 U.S.C. § 7434(a) against Defendants Gonzalez and Home Point Financial in an amended complaint. If Plaintiff fails to file an amended complaint within the time allowed, the Court will enter judgment that will: (1) dismiss Plaintiff's claims under federal law for the reasons set forth in this order; (2) dismiss Plaintiff's claims under state law, brought under the Court's diversity jurisdiction, for lack of subject-matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3); and (3) decline to consider, under the Court's supplemental jurisdiction, Plaintiff's claims under state law, *see* 28 U.S.C. § 1367(c)(3). Defendants need not respond to Plaintiff's claims until Plaintiff has filed an amended complaint in compliance with this order.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:   May 24, 2022
       White Plains, New York

                                          CATHY SEIBEL
                             United States District Judge